**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LIFE INSURANCE COMPANY OF NORTH AMERICA, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:08-cv-00963 |
| DEBRA A. BROWNING and THERESA A. SCIMECA, Individually, and as Guardian of her minor child, CODY BROWNING, | ) ) ) ) | Judge Der-Yeghiayan<br><br>Magistrate Judge Nolan |
| Defendants. | ) | |

**THERESA SCIMECA'S ANSWER TO AMENDED COMPLAINT
FOR INTERPLEADER AND OTHER RELIEF
AND COUNTER-CLAIM/CROSS-CLAIM**

NOW COMES DEFENDANT, THERESA A. SCIMECA ("Theresa"), individually, and as Guardian of her minor child, Cody Browning, by and through her attorneys, CHUHAK & TECSON, P.C., and for her Answer to Amended Complaint for Interpleader and Other Relief, states as follows:

**Introduction**

Theresa admits the facts contained in the Introduction.

**Parties**

1. LINA is a Pennsylvania corporation with its principal place of business located in Philadelphia.

**ANSWER**:

Theresa has no information regarding LINA and therefore neither admits nor denies the allegations contained in ¶ 1.

2. Theresa A. Scimeca ("Theresa") resides in Antioch, Illinois in the County of Lake. Theresa was the first wife of Jack Browning ("Jack"). Cody Browning ("Cody") was born on August 15, 1993 to Theresa and Jack Browning. Cody is presently fourteen years old.

**ANSWER**:

 Theresa admits the allegations contained in ¶ 2.

3. Debra A. Browning ("Debra") resides in Plainfield, Illinois in the County of Will. Debra is the second wife of Jack Browning and was married to him at the time of his death.

**ANSWER**:

 Theresa admits the allegations contained in ¶ 3.

## Jurisdiction

4. LINA invokes this Court's jurisdiction pursuant to Fed. R. Civ. P22, through 28 U.S.C. 1331 and 29 USC 1132(a)(3), in that the life insurance benefit at issue was part of an employee benefit plan within the meaning of the Employment Retirement Income Security Act of 1974 as amended (29 USC Sec. 1001 *et. seq.*) ("ERISA").

**ANSWER**:

 Theresa admits that the insurance benefit was part of an employee sponsored plan, but has no further knowledge if it is an ERISA plan.

5. Venue is proper in this District both because all defendants reside in this District and a substantial part of the events giving rise to this action occurred in this District.

**ANSWER**:

 Theresa admits the allegations contained in ¶ 5.

## Interpleader Facts

6. LINA issued a group life insurance policy to McMaster, Policy Number FLX 960387 (the "Policy") in connection with an employee welfare benefit plan sponsored by McMaster (the "Plan"). A true and correct copy of the Policy is attached hereto as Exhibit A.

**ANSWER**:

 Theresa neither admits nor denies the allegations contained in ¶ 6, but demands strict proof thereof.

7. Jack Browning was employed by McMaster and was a plan participant in the Plan.

**ANSWER**:

    Theresa admits the allegations contained in ¶ 7.

8.    Jack Browning died on or about November 16, 2007.

**ANSWER**:

    Theresa admits the allegations contained in ¶ 8.

9.    As a result of the aforesaid death, a death benefit in the amount of $77,100 (the "Proceeds") became payable under the Plan and therefore under the terms of the Policy.

**ANSWER**:

    Theresa neither admits nor denies the allegations contained in ¶ 9, but demands proof of the amount of the Policy.

10.    Jack Browning and Theresa were divorced on or about October 7, 1998.

**ANSWER**:

    Theresa admits the allegations contained in ¶ 10.

11.    Theresa contends that, pursuant to the Judgment for Dissolution of Marriage and the Marital Settlement Agreement between them ("Marital Settlement Agreement"), Jack Browning was required to maintain a life insurance policy with Theresa as the beneficiary until Cody became emancipated. True and correct copies of the Judgment for Dissolution of Marriage and the Marital Settlement Agreement are attached hereto as Exhibit B.

**ANSWER**:

    Theresa admits the allegations contained in ¶ 11. Stating further, Theresa states the Judgment for Dissolution of Marriage and the Marital Settlement Agreement require that 100% of the Proceeds be given to Theresa as the beneficiary for the benefit of her and Jack Browning's son, Cody.

12.    Section 10.1(B) of the Marital Settlement Agreement provides that one of the circumstances constituting an "emancipation event" is when Cody has a "permanent residence away from the permanent residence of the custodial spouse."

**ANSWER**:

Section 10.1(B) of the Marital Settlement Agreement speaks for itself. Stating further, Theresa states that Jack Browning was the custodial parent at the time of his death. The biological custodial parent can change and did so in this family. Cody, who is fourteen years old, never had a "permanent residence away from the permanent residence of the custodial spouse." It is not the intent or requirement of Section 10.1(B) of the Marital Settlement Agreement that this fourteen-year-old boy be emancipated at age twelve when he happened to live with his father instead of his mother.

13. In a beneficiary designation Form dated on or about June 28, 2003 (the "BDF"), Jack designated Debra to receive 25% of the Proceeds and Cody to receive 75% of the Proceeds. A true and correct copy of this Beneficiary Designation Form is attached hereto as Exhibit C.

**ANSWER**:

Theresa admits that the beneficiary form states that Jack designated Debra to receive 25% of the Proceeds and Cody to receive 75% of the Proceeds. However, Theresa denies that the Decedent was authorized to complete such a form.

14. Debra has made a claim to 25% of the Proceeds, contending that Section 10.1(B) of the Marital Settlement Agreement did not restrict Jack from changing his beneficiary because Cody had become emancipated when he went to live with Jack and Debra and a full-time basis.

**ANSWER**:

Theresa admits Debra has made a claim, but denies the substantive allegations contained in ¶ 14.

15. Theresa has also made a claim to 100% of the Proceeds, contending that the Marital Settlement Agreement controls and that she is entitled to the Proceeds.

**ANSWER**:

Theresa admits the allegations contained in ¶ 15.

- 4 -

747799.2.18835.34570

16. In light of the competing claims of the defendants, LINA is at risk of being subjected to multiple liability under the Policy if it pays the proceeds either pursuant to the MDF or pursuant to the Marital Settlement Agreement.

**ANSWER**:

Theresa admits the allegations contained in ¶ 16.

WHEREFORE, THERESA A. SCIMECA, as Guardian of her minor child, Cody Browning, respectfully requests that this Court:

A. enforce the Judgment for Dissolution of Marriage and Marital Settlement Agreement;

B. order that the 100% of the Proceeds of the Policy, plus interest, be awarded to Theresa A. Scimeca, pursuant to Article XII of the Marital Settlement Agreement;

C. find that Cody Browning was never emancipated;

D. order that each party bear its own fees and costs; and

E. grant any other relief this Court deems just and appropriate.

**COUNTER-CLAIM AND CROSS-CLAIM FOR DECLARATORY JUDGMENT**

NOW COMES DEFENDANT, THERESA A. SCIMECA ("Theresa"), individually, and as Guardian of her minor child, Cody Browning, by and through her attorneys, CHUHAK & TECSON, P.C., and for her counter-claim and cross-claim for declaratory judgment, states as follows:

1. LINA issued a life insurance policy on Jack Browning's life through his employer, McMaster.

2. Theresa A. Scimeca ("Theresa") resides in Antioch, Illinois, in the County of Lake. Theresa was the first wife of Jack Browning ("Jack"). Cody Browning ("Cody") was born on August 15, 1993, to Theresa and Jack. Cody is presently fourteen years old.

3.      Debra A. Browning ("Debra") resides in Plainfield, Illinois, in the County of Will. Debra is the second wife of Jack Browning and was married to him at the time of his death.

4.      Jack was employed by McMaster.

5.      Jack died on or about November 16, 2007.

6.      As a result of Jack's death, the death benefits of the life insurance policy in place were required to be paid in its entirety to Theresa.

7.      Jack and Theresa were divorced on or about October 7, 1998.

8.      Article XII, Section 12.1, of the Marital Settlement Agreement states as follows:

> "Husband shall maintain a life insurance policy which has been heretofore provided for him by his employer. Husband shall maintain Wife as the beneficiary of said policy until Cody is emancipated. On an annual basis, on or before May 1st of each year, Husband shall provide Wife with a statement of said policy. The Husband shall not pledge, hypothecate, borrow against or otherwise cause the death benefits under existing policy(ies), to the extent that current life insurance benefits are reduced to a level below that as of the date of this Agreement."

9.      A Judgment for Dissolution of Marriage entered by an Illinois court is an enforceable judgment.

10.     Article VI of the Marital Settlement Agreement provides for "JOINT LEGAL CUSTODY to the Wife and the Husband."

11.     At the time of Jack's death, Cody resided with one of his parents who had JOINT LEGAL CUSTODY.

12.     Cody was **fourteen** years old when his father, Jack, died.

13.     Cody attended school in the district where his father, Jack, resided.

14.     Cody has not graduated high school.

15.     750 ILCS 5/602.1 provides for legal joint custody which was ordered in the Judgment for Dissolution of Marriage.

16. Both Theresa and Jack were considered the joint custodial parents under Illinois law. The physical residence may have changed, but the custodial parent remained joint until the Decedent died.

17. 750 ILCS 5/505(6)(g) states support for a minor child ends no earlier then 18 years of age.

18. Cody always lived with one of his parents.

19. Cody was never emancipated under Illinois statutory law.

20. Jack was obligated under Illinois law and the Judgment for Dissolution of Marriage/Marital Settlement Agreement to name Theresa as the death beneficiary of his employee life insurance policy. The surviving spouse has other assets -- the marital home to name one. With the apparent end of child support, this insurance policy is needed for the care and support of the minor.

WHEREFORE, Counter Plaintiff and Cross Plaintiff, THERESA A. SCIMECA, prays that this Court find and declare that she is entitled to one hundred percent (100%) of such funds and enter an order finding and declaring that the insurance proceeds should be distributed to Theresa A. Scimeca in accordance with the Judgment for Dissolution of Marriage entered October 7, 1998.

Respectfully submitted,

THERESA A. SCIMECA

By: /s/ Mitchell S. Feinberg
One of Her Attorneys

Mitchell S. Feinberg
Sanjay Shivpuri
CHUHAK & TECSON, P.C.
30 S. Wacker Drive – Suite 2600
Chicago, IL  60606

747799.2.18835.34570

- 8 -

312-444-9300

747799.2.18835.34570