**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LIFE INSURANCE COMPANY OF | ) | |
| NORTH AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:08-cv-00963 |
| | ) | |
| DEBRA A. BROWNING and THERESA | ) | Judge Der-Yeghiayan |
| A. SCIMECA, Individually, and as Guardian | ) | |
| of her minor child, CODY BROWNING, | ) | Magistrate Judge Nolan |
| | ) | |
| Defendants. | ) | |

**THERESA SCIMECA'S ANSWER TO DEBRA A. BROWNING'S**
**COUNTERCLAIM AND CROSSCLAIM FOR DECLARATORY JUDGMENT**

NOW COMES DEFENDANT, THERESA A. SCIMECA ("Theresa"), individually, and

as Guardian of her minor child, Cody Browning, by and through her attorneys, CHUHAK &

TECSON, P.C., and for her Answer to Debra A. Browning's Counterclaim, states as follows:

1.    Defendant Debra Browning brings this Counterclaim and Crossclaim in order to request
      that this Court declare the rights and obligations of the parties under a certain insurance
      policy attached to the Complaint, pursuant to 28 U.S.C. § 2201, and Rule 57 of the
      Federal Rules of Civil Procedure.

**ANSWER**:

      Theresa admits the allegations contained in ¶ 1.

2.    Plaintiff and Counterdefendant LINA is a Pennsylvania corporation with its principal
      place of business located in Philadelphia.

**ANSWER**:

      Theresa has no information regarding LINA and therefore neither admits nor denies the

allegations contained in ¶ 2.

3.    Defendant and cross-defendant Theresa A. Scimeca ("Theresa") resides in Antioch,
      Illinois in the County of Lake.  Theresa was the first wife of Jack Browning ("Jack").
      Cody Browning ("Cody") was born on August 15, 1993 to Theresa and Jack Browning.

747845.2.18835.34570

**ANSWER**:

   Theresa admits the allegations contained in ¶ 3.

4.  Debra resides in Plainfield, Illinois in the County of Will.  Debra is the second wife of Jack Browning and was married to him at the time of his death.

**ANSWER**:

   Theresa admits the allegations contained in ¶ 4.

5.  Venue is proper in this District both because all defendants reside in this District and a substantial part of the events giving rise to this action occurred in this District.

**ANSWER**:

   Theresa admits the allegations contained in ¶ 5.

6.  LINA issued a group life insurance policy to McMaster-Carr Supply Company ("McMaster"), Policy Number FLX 960387 (the "Policy") in connection with an employee welfare benefit plan sponsored by McMaster (the "Plan").  A true and correct copy of the Policy is attached hereto as Exhibit A.

**ANSWER**:

   Theresa neither admits nor denies the allegations contained in ¶ 6, but demands strict

proof thereof.

7.  In a beneficiary designation Form dated on or about June 28, 2003 (the "BDF"), Jack designated Debra to receive 75% of the Proceeds and Cody to receive 25% of the Proceeds.  A true and correct copy of this Beneficiary Designation Form is attached to the Complaint filed herein by LINA as Exhibit C.

**ANSWER**:

   Theresa denies the allegations contained in ¶ 7.  Exhibit C to the LINA Complaint

designated Debra to receive 25% (not 75%) of the Proceeds and Cody to receive 75% (not 25%)

of the Proceeds.

8.  Jack Browning was employed by McMaster and was a participant in the Plan.

- 2 -

747845.2.18835.34570

**ANSWER**:

Theresa admits the allegations contained in ¶ 8.

9.    Jack Browning died on or about November 16, 2007.

**ANSWER**:

Theresa admits the allegations contained in ¶ 9.

10.    As a result of the aforesaid death, upon information and belief a death benefit (the "Proceeds") became payable under the Plan and therefore under the terms of the Policy.

**ANSWER**:

Theresa neither admits nor denies the allegations contained in ¶ 10, but demands proof of

the amount of the Policy.

11.    Jack Browning and Theresa were divorced on or about October 7, 1998.

**ANSWER**:

Theresa admits the allegations contained in ¶ 11.

12.    Section 6.1 of the Marital Settlement Agreement provided that:  The parties further agree that is in the best interest of the minor child, that primary physical placement of the minor child be awarded to the Wife, subject to the reasonable and liberal visitation rights of the Husband.

**ANSWER**:

Theresa denies the allegations contained in ¶ 12.  Section 6.1 (in full) of the Marital

Settlement Agreement provided that,

"The Wife and Husband agree that both parties are fit and proper persons for care, custody, control and direction of the minor children of the marriage, and that it is in the best interest of the minor child to award JOINT LEGAL CUSTODY to the Wife and the Husband.  The parties further agree that it is in the best interest of the minor child, that primary physical placement of the minor child be awarded to the Wife, subject to the reasonable and liberal visitation rights of the Husband."

13.    Pursuant to paragraph 6.24 of the Marital Settlement Agreement, Jack had specified visitation on various holidays and at other times, including two weeks during summer vacation.

747845.2.18835.34570

**ANSWER**:

Denied.  Section  6.24 (in full) describes Husband and Wife's holiday schedules with

Cody.

14.    Article XII of the Marital Settlement Agreement, a true and correct copy of which is attached to the Complaint filed herein as Exhibit B, states as follows:  Husband shall maintain a life insurance policy which has heretofore provided for him by his employer. Husband shall maintain Wife as the beneficiary of said policy until Cody is emancipated ...

**ANSWER**:

Denied.  Article XII (in full) states:

"Husband shall maintain a life insurance policy which has been heretofore provided for him by his employer.  Husband shall maintain Wife as the beneficiary of said policy until Cody is emancipated.  On an annual basis, on or before May 1st of each year, Husband shall provide Wife with a statement of said policy.  The Husband shall not pledge, hypothecate, borrow against or otherwise cause the death benefits under existing policy(ies), to the extent that current life insurance benefits are reduced to a level below that as of the date of this Agreement."

15.    Section 10.1 of the Marital Settlement Agreement defined the term "emancipation" and provides, in relevant part as follows: *10.1  With respect to any child, an "emancipation event" shall occur or be deemed to have occurred upon the first of the following to occur:  B.  Child's having a permanent residence away from the permanent residence of the custodial spouse.*

**ANSWER**:

Denied.  Section 10.1 (in full) reads:

"With respect to any child, an 'emancipation event' shall occur or be deemed to have occurred upon the first of the following to occur:
        A. Child's marriage;
        B. Child's having a permanent residence away from the permanent residence of the custodial spouse.  A temporary residence at a boarding school, camp, vocational school, college, or professional school shall not be deemed a permanent residence away from the permanent residence of the custodial spouse;
        C. The child's death.
        D. The child reaching the age of majority, or graduating from high school, whichever occurs later."

747845.2.18835.34570

16.     In a beneficiary designation Form dated on or about June 28, 2003 (the "BDF"), Jack designated Debra to receive 75% of the Proceeds and Cody to receive 25% of the Proceeds.  A true and correct copy of this Beneficiary Designation Form is attached to the Complaint filed herein by LINA as Exhibit C.

**ANSWER**:

Theresa denies the allegations contained in ¶ 16.

17.     In 2005, Cody, then 12 years of age, took up permanent residence away from his mother and began permanently residing with Debra and his father, Jack.

**ANSWER**:

Theresa admits the allegations contained in ¶ 17.

18.     The decision that Cody would no longer reside with his mother was mutual by and among Cody, his mother and Jack, in that Cody no longer wanted to reside with his mother, and his mother, having remarried, no longer wanted the burden of raising him on a daily basis.

**ANSWER**:

Theresa denies the allegations contained in ¶ 18.

19.     By reason of these facts Cody became emancipated within the meaning of the Marital Settlement Agreement, and Jack no longer had the obligation to maintain life insurance with Theresa, his ex-wife, and no longer the custodial parent of Cody, as the beneficiary.

**ANSWER**:

Denied.  In fact, there was JOINT LEGAL CUSTODY.  Therefore, both parents were the

"Custodial Parent."  Further, 750 ILCS 5/602.1 provides for joint custody which was ordered in

The Judgment for Dissolution of Marriage.

20.     Although the Marital Settlement Agreement provided for Jack to pay Theresa Child Support in the amount of $320.00 per month, following the emancipation of Cody, Theresa rebated the child support payments which had been deducted from Jack's salary back to Jack, thus further recognizing Cody's emancipation.  Theresa did not pay play child support to Jack and Debra.

- 5 -

747845.2.18835.34570

**ANSWER**:

Denied.  Theresa admits she gave back the child support payments because, being an honorable person, she no longer had primary physical custody of the Child.  Now that Cody's father is deceased, the life insurance Proceeds are needed in lieu of child support to raise Cody. That is its purpose in the Marital Settlement Agreement.  Cody is far from a self-sufficient emancipated person as alleged.

21.   Subsequently, neither Jack nor Theresa took legal action to formally amend the Marital Settlement Agreement or to modify the Judgment for Dissolution of Marriage, despite the fact that Theresa was no longer the primary physical custodian, that Jack was no longer paying child support, or that the parties rights and obligations with respect to visitation rights had been unenforced by them.

**ANSWER**:

Theresa denies the allegations contained in ¶ 21, there being no reason to modify the Judgment for Dissolution of Marriage.  Stating further, the Life Insurance section was <u>never</u> modified as it would always be needed if the father died and Cody lived with his mother, as he now does.

22.   By reason of these facts, Theresa had waived strict compliance with the terms of the Marital Settlement Agreement.

**ANSWER**:

Theresa denies the allegations contained in ¶ 22; stating further that neither she nor Jack can choose to waive compliance with a court-ordered Judgment for Dissolution of Marriage.

23.   By reason of these facts, twenty five percent (25%) of the death benefits to be paid by plaintiff must be paid to Debra in accordance with the BDR executed by jack on or about June 28, 2003.

**ANSWER**:

Theresa denies the allegations contained in ¶ 23.

747845.2.18835.34570

24.     Jack relied to his detriment on Theresa's actions and reasonably believed that Cody was emancipated within the meaning of the Marital Settlement Agreement, and in reasonable and justifiable reliance on these facts he executed the aforementioned BDF on June 28, 2003.

**ANSWER**:

Theresa denies the allegations contained in ¶ 24.

25.     By reason of these facts, Theresa must be estopped from denying that Cody was emancipated within the meaning of the Marital Settlement Agreement.

**ANSWER**:

Theresa denies the allegations contained in ¶ 25.

WHEREFORE, Counter Plaintiff and Cross Plaintiff, THERESA A. SCIMECA, prays that this Court find and declare that she is entitled to one hundred percent (100%) of such funds and enter an order finding and declaring that the insurance proceeds should be distributed to Theresa A. Scimeca in accordance with the Judgment for Dissolution of Marriage entered October 7, 1998.

Respectfully submitted,

THERESA A. SCIMECA

By: ___/s/ Mitchell S. Feinberg___
        One of Her Attorneys

Mitchell S. Feinberg
Sanjay Shivpuri
CHUHAK & TECSON, P.C.
30 S. Wacker Drive – Suite 2600
Chicago, IL  60606
312-444-9300

747845.2.18835.34570